**Slip Op. 20-20**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>**Defendant,**<br><br>**and**<br><br>**COOPER TIRE & RUBBER COMPANY, CHINA RUBBER INDUSTRY ASSOCIATION, AND CHINA CHAMBER OF COMMERCE OF METALS, MINERALS AND CHEMICALS,**<br><br>**Defendant-Intervenors.** | **Before: Jennifer Choe-Groves, Judge**<br><br>**Consol. Court No. 17-00078** |

**OPINION**

[Sustaining the U.S. International Trade Commission's remand redetermination following the antidumping and countervailing duty investigations of truck and bus tires from the People's Republic of China.]

Dated: February 18, 2020

Elizabeth J. Drake and Geert De Prest, Schagrin Associates, of Washington, D.C., argued for Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC. With them on the brief were Terence P. Stewart, Mark D. Beatty, and Shahrzad Noorbaloochi.

David A. Goldfine, Attorney, Office of General Counsel, U.S. International Trade Commission, of Washington, D.C., argued for Defendant United States. With him on the brief were Dominic L. Bianchi, General Counsel, and Andrea C. Casson, Assistant General Counsel for Litigation.

Ned H. Marshak, Max. F. Schutzman, and Jordan C. Kahn, Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP, of New York, N.Y., argued for Defendant-Intervenors China Rubber Industry Association and China Chamber of Commerce of Metals, Minerals and Chemicals.

Choe-Groves, Judge: This action involves a challenge to the U.S. International Trade Commission's ("ITC" or "Commission") final affirmative material injury determination on remand in its antidumping and countervailing duty investigations on truck and bus tires ("TBTs") from the People's Republic of China. See Truck and Bus Tires from China, Inv. Nos. 701-TA-556 and 731-TA-1311 (Final), USITC Pub. 4673 (Mar. 2017), PD 198 ("USITC Pub. 4673"); Views of the Commission on Remand (Int'l Trade Comm'n Jan. 30, 2019), ECF No. 63 ("Remand Results").

Before the court are the Commission's Remand Results filed per the court's order in United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC v. United States, 42 CIT __, 348 F. Supp. 3d 1328, 1339–40 (2018) ("United Steel I"). For the reasons discussed below, the court sustains the Remand Results.

## I. BACKGROUND

The court presumes familiarity with the facts and record of proceedings as discussed in the prior opinion and recounts those facts relevant to the court's review of the Remand Results. See United Steel I at 1330–39.

In January 2016, Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW") filed a petition in the antidumping and countervailing duty investigations as to TBTs from China.

Remand Results at 1. The Commission instituted countervailing and antidumping duty investigations and reached affirmative preliminary determinations. Truck and Bus Tires from China, 81 Fed. Reg. 14,888, 14,888 (Int'l Trade Comm'n Mar. 18, 2016). Based on the record developed in the subject investigations, the Commission voted 3-2 in February 2017 that the domestic industry was neither materially injured nor threatened with material injury by reason of subject imports of TBTs from China. Remand Results at 3.[1]

USW challenged several aspects of the Commission's negative material injury determination, including its findings on the conditions of competition and determinations as to price effects, impact, and threat. United Steel I at 1332–39. The court sustained the conditions of competition findings and adverse impact determinations, but remanded to the Commission for reconsideration of its price effects and threat analyses. Id. at 1335–39. The court directed the Commission to reconsider the presence of significant underselling in its price effects analysis and to address certain aspects of its negative threat determination. Id.

On remand in a 3-2 vote in January 2019, the Commission reached an affirmative material injury determination, an opposite result from the prior proceeding. Remand Results at 1.[2] The Commission reasoned that the subject imports are sold in the United States at less than

---

[1] In the original proceeding, then-Vice Chairman Johanson and Commissioners Broadbent and Kieff reached a negative injury determination, while two Commissioners—then-Chairman Schmidtlein and Commissioner Williamson—reached an affirmative material injury determination. Remand Results at 3; USITC Pub. 4673 at 3 n.1.

[2] Commissioners Schmidtlein, Williamson, and Kearns reached an affirmative material injury determination on remand, while Chairman Johanson and Commissioner Broadbent again reached a negative determination. Remand Results at 1 n.2, Dissent at 3–10. Although not a member when the Commission issued the original determination, Commissioner Kearns made an affirmative injury finding in the remand proceedings by conducting a *de novo* review of the record. Remand Results at 1 n.3.

fair value and are subsidized by the Chinese government.  See id. at 1, 35–47.  Specifically, the

ITC found that "the volume and increase in volume of subject imports [was] significant in

absolute terms and relative to domestic production and consumption[,]" id. at 37, that the subject

imports undersold the domestic like product in increasing margins and significantly depressed

prices, id. at 41–42, and "that the significant volume of subject imports, at prices that undersold

the domestic like product and depressed domestic prices, adversely impacted the domestic

industry," id. at 47.

Defendant-Intervenor China Rubber Industry Association and Sub-Committee of Tire

Producers of the China Chamber of Commerce of Metals, Minerals & Chemical Importers

(collectively, "Respondents") contest certain aspects of the Remand Results, specifically, the

ITC's findings on the three mandatory injury factors: volume, impact, and price.

Def.-Intervenors' Comments in Opp'n to the Commission's Remand 8–44, ECF No. 80

("Respondents' Br.").  Defendant United States and Plaintiff USW filed replies in support of the

Remand Results.  Def. United States' Reply Comments in Supp. of the Affirmative Remand

Determinations, ECF No. 90 ("Def.'s Br."); Pl.'s Reply Comments in Supp. of the Commission's

Affirmative Remand Determination, ECF No. 94 ("USW's Br.").  Defendant-Intervenor Cooper

Tire & Rubber Company filed no comments on the Remand Results.  The court held oral

argument.  Oral Argument, Oct. 29, 2019, ECF No. 112.

## II.  JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction under 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c).

The court will uphold the Commission's determination unless it is unsupported by substantial

record evidence, or otherwise not in accordance with the law.  19 U.S.C. § 1516a(b)(1)(B)(i).

The court also reviews determinations made on remand for compliance with the court's order.

ABB Inc. v. United States, 42 CIT __, 355 F. Supp. 3d 1206, 1211 (2018) (citation omitted).

## III.   DISCUSSION

Respondents contend that the Commission's volume, price effects, and impact analysis findings are unsupported by substantial evidence.  Respondents' Br. at 6.  USW responds that Respondents misapprehend the standard of review because Respondents request that the court conduct an impermissible reweighing of the evidence or otherwise make new factual findings based on opposing substantial evidence.  USW's Br. at 11, 27.

### A.  The Commission's Volume Determination is Sustained

Respondents argue that the Commission's volume analysis is unsupported by substantial evidence because the Commission's market segment analysis failed to consider retreaded TBTs in the aftermarket when evaluating the significance and increase in volume of subject imports. Respondents' Br. at 8.  USW avers that because the domestic like product did not include retreaded TBTs, the Commission correctly disregarded shipments of retreaded TBTs and focused on shipments of the domestic like product.  USW's Br. at 4, 31–34.  USW highlights that before the Commission began its investigations, even Respondents asserted that retreaded TBTs should be excluded from the domestic like product analysis.  Id. at 32–33.  In its original negative determination, the Commission found that substantial evidence supported a conclusion that the volume of subject imports was significant in absolute terms and relative to consumption.  USITC Pub. 4673 at 26.  On remand, the Commission reached the same conclusion.  Remand Results at 37.

When analyzing whether an industry is materially injured "by reason of" subject imports, the Commission must "consider whether the volume of imports of the merchandise, or any

increase in that volume, either in absolute terms or relative to production or consumption in the United States, is significant." 19 U.S.C. § 1677(7)(C)(i). In reviewing the Commission's findings, the court may not '"reweigh the evidence or . . . reconsider questions of fact anew.'" Downhole Pipe & Equip., L.P. v. United States, 776 F.3d 1369, 1377 (Fed. Cir. 2015) (quoting Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube AB, 975 F.2d 807, 815 (Fed. Cir. 1992)).

In this case, the court concludes that substantial evidence supports the Commission's volume determination. The Commission relied on data showing an increase in subject imports and that subject imports gained market share during the period of investigation. Remand Results at 27, 35. As to the total market share increase, the Commission examined questionnaire data and found that the growth in subject imports was particularly concentrated in the TBT aftermarket. Id. at 35–37. The Commission excluded retreaded TBTs from the domestic industry in its preliminary determinations because no party advocated for a contrary result and the record generally showed "clear dividing lines between new and retreaded [TBTs], particularly given clear distinctions between them in terms of manufacturing processes, facilities, and employees, and price, and also due to distinctions between them in terms of use and channels of distribution and somewhat limited interchangeability." Remand Results at 16–17. When the Commission considered making its final determinations, the parties also agreed that retreaded TBTs should be excluded from the domestic like product and industry analysis. Id.; see NSK Corp. v. United States, 32 CIT 966, 983 (2008) ("It is well settled that the ITC bears no obligation to perform a market segmentation analysis" and "d[oes] not err in basing its determination on data representing the experience of the domestic industry as a whole, rather than on the experience of [different segments of the industry] separately." (quoting Tropicana

Prods., Inc. v. United States, 31 CIT 548, 559–60 (2007)). The Commission examined record evidence in the form of official Commerce statistics and questionnaire responses from domestic and foreign producers or exporters of TBTs to conclude that during the period of investigation, there was an increase in both subject imports and market share of subject imports. Remand Results at 35; see USITC Pub. 4673 at I-4, C-1. Because the court concludes that substantial evidence supports the Commission's volume determination, the court sustains the Commission's volume determination.

**B. The Commission's Price Effects Determination is Sustained**

Respondents argue that the Commission relied on an invalid methodology when it used quarterly pricing data to analyze price effects, because Respondents argue that the Commission should recalculate the data to derive annualized figures. Respondents' Br. at 12–14. Defendant responds that the Commission followed past practice in collecting and reporting pricing data and that the Commission relied on the same quarterly price comparisons in both the original and remand proceedings. Def.'s Br. at 19.

When evaluating the price effects of subject imports, the Commission must separately address two issues: (1) whether there is significant price underselling and (2) whether the subject imports have depressed or suppressed domestic prices to a significant degree. See 19 U.S.C. § 1677(7)(C)(ii). The Commission has discretion in evaluating domestic injury because the antidumping statute does not direct the use of a specific methodology. See Bratsk Aluminum Smelter v. United States, 444 F.3d 1369, 1373 & n.3 (Fed. Cir. 2006) (citing United States Steel Grp. v. United States, 96 F.3d 1352, 1361–62 (Fed. Cir. 1996)). "When evaluating challenges to the ITC's choice of methodology, the court will affirm the chosen methodology as long as it is

reasonable." JMC Steel Grp. v. United States, 39 CIT ___, 70 F. Supp. 3d 1309, 1316 n.4 (2015) (citations omitted).

Respondents' contentions lack merit. The Commission found that the domestic like product and subject imports were "moderately to highly substitutable" and that the quarterly price comparison data provided in the producer and importer questionnaire responses showed that subject imports undersold the domestic like product at high and increasing margins. Remand Results at 38–42 (observing that subject imports undersold the domestic like product in 79 of 85 possible quarterly comparisons). The Commission conducted a price and cost comparison and concluded that the drop in raw material costs could not account for the magnitude of the domestic price declines. Id.; USITC Pub. 4673 at Tables C-1, V-3. The Commission also found that subject imports depressed prices to a significant degree and that the domestic industry's lower raw material costs could not alone explain the magnitude of the domestic price declines because prices declined more than costs. Remand Results at 42; Siemens Energy, Inc. v. United States, 806 F.3d 1367, 1372 (Fed. Cir. 2015) ("While the court must consider the record as a whole, when the Commission has based its determination on substantial evidence and considered the evidence that fairly detracts from its conclusion, the court may not displace the agency's choice."). Based on the record evidence, it was reasonable for the Commission to conclude that the significant volume of subject imports undersold the domestic like product causing significant adverse price effects. The court sustains the Commission's price effects determination.

### C. The Commission's Impact Determination is Sustained

Respondents argue that the Commission's impact analysis is flawed because the Commission: (1) fails to consider the "inverse correlation" between subject imports and domestic

industry performance; (2) errs in conducting an "apples-to-oranges" comparison when comparing the annual declines in costs with quarterly declines in prices; (3) disregards record evidence showing the domestic industry was already operating at full capacity and was therefore unable to supply additional demand; and (4) ignores evidence about retreading and leasing operations.  Respondents' Br. at 20.  Respondents' arguments are unpersuasive.

The Commission evaluates the impact of subject imports on the domestic industry using "all relevant economic factors which have a bearing on the state of the industry."  19 U.S.C. § 1677(7)(C)(iii).  Relevant factors "bearing on the state of the industry" include actual and potential decline in output, sales, market share, profits, productivity, return on investments, and utilization of capacity, factors affecting domestic prices, actual and negative effects on cash flow, inventories, employment, wages, growth, ability to raise capital, and investment.  Id.; 19 U.S.C. § 1677(7)(J) (noting that the Commission may not find that there is no material injury to the domestic industry "merely because that industry is profitable or because the performance of that industry has recently improved[]").  The Commission fulfills its statutory duty by determining "whether the subject imports were a substantial factor in the injury to the domestic industry, as opposed to a merely incidental, tangential, or trivial factor."  Mittal Steel Point Lisas Ltd. v. United States, 542 F.3d 867, 879 (Fed. Cir. 2008) (citation and footnote omitted).

In this case, the Commission noted the positive performance indicators in the domestic industry and determined that the significant volume of subject imports, at prices that undersold the domestic like product and depressed domestic prices, adversely impacted the domestic industry.  Remand Results at 43, 47.  The Commission found that many of the performance indicators lagged behind the strong growth in apparent U.S. consumption.  Id. at 43. Specifically, the domestic market share grew by 21.3%, the domestic industry's market share fell

7.7 percentage points, from 53.3% in 2013 to 45.6% in 2015, and domestic industry shipments

rose only by 3.9%.  Id.  Although it recognized that the domestic industry's production and

capacity utilization both improved from 2013 to 2015, it also found that the domestic industry's

capacity declined from 2013 to 2015 even in a growing market.  Id. at 45.  Even though the

domestic industry's profit increased, the Commission characterized the profit increase as

"modest" in light of the significant increase in demand and decline of raw material costs.  Id. at

44.  It was reasonable for the Commission to conclude that the significant volume of subject

imports, which are "moderately to highly" suitable substitutes for the domestic like product,

captured significant market share from the domestic industry and significantly undersold the

domestic like product at increasing margins and depressed prices to a significant degree.  Id. at

42, 47.  The underselling and price depression prevented the domestic industry from increasing

its revenues commensurate with growing demand.  Id. at 45.  Because the record shows that the

domestic industry had fewer shipments and obtained lower revenues even during a period of

increased demand, the court concludes that it was reasonable for the Commission to conclude

that the subject imports significantly impacted the domestic industry.

The Commission considered and rejected Respondents' arguments that the domestic

industry was operating at full capacity and concluded that the domestic industry had additional

available capacity to supply the market with TBTs.  Id. at 37–38, 44–45.  Respondents'

arguments that the Commission should have considered retreaded TBTs in the impact analysis

lack merit, given the Commission's uncontested findings that retreaded TBTs were not part of

the domestic like product and retreaded TBT producers were not part of the domestic industry.

See 19 U.S.C. § 1677(7)(B)(i) (noting that the Commission must consider the volume of subject

imports, effects of such imports on domestic like products, and "the impact of imports of

[subject] merchandise on domestic producers of domestic like products, but only in the context of production operations within the United States"). The court concludes that substantial evidence supports the impact determination and sustains the Commission's findings.

The court concludes that substantial evidence supports the Commission's overall findings on the volume of subject imports, price effects, and impact on the domestic industry. The record reflects that the Commission considered whether other factors—apart from the subject imports—may have contributed to the domestic injury and concluded that those factors did not break the causal link between the subject imports and material injury to the domestic industry. Remand Results at 25, 46–48.

**D. The Commission Complied with the Court's Remand Order**

Respondents assert that the Remand Results are not in compliance with the court's remand order because the three Commissioners who found an affirmative injury determination "ignored this Court's opinion and analysis, acting as it [*sic*] had never existed, and essentially adopted" the original dissenting view. Respondents' Br. at 44–45. Respondents overlook examples of cases in which courts have affirmed Commission remand determinations that reached a result different from the original determinations where the Commission on remand largely adopted the original dissenting views as it did here. See, e.g., Drill Pipe & Drill Collars from China, Inv. Nos. 701-TA-474 and 731-TA-1176 (Final) (Remand), USITC Pub. 4507 at 7 (Dec. 2014), aff'd, Downhole Pipe & Equip., L.P. v. United States, 38 CIT ___, 34 F. Supp. 3d 1310 (2014), aff'd, Downhole Pipe & Equip., L.P. v. United States, 621 F. App'x 667 (Fed. Cir. 2015); Celanese Chems. Ltd. v. United States, 32 CIT 1250, 1255–56 (2008), aff'd, 358 F. App'x 174 (Fed. Cir. 2009). The court notes that one commissioner reviewed the record on remand *de novo* because

he was not a member when the Commission made its original determination. The court concludes that the Remand Results comply with the court's order.

## IV. CONCLUSION

The court concludes that the Commission's affirmative material injury determination on remand complied with the court's remand order and that its factual findings as to volume, price, and impact are supported by substantial evidence. The court sustains the Remand Results.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated: February 18, 2020
New York, New York